

AUG - 6 2010
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

RECEIVED
FEB 22 2010
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

2010 FEB 22 P 4: 58
CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

EMEKA EKE,                                )
25416 Walkers Landing Ct.                 )
Petersburg VA 23803                       )
804-926-3122                              )
Buzum2001@yahoo.com                       )
                                          )
PLAINTIFF,                                )
    PRO SE                          )   CIVIL ACTION:
                                          )   NO.3:09CV488(RLW)
VS.                                       )
                                          )
BANK OF AMERICA, NA;                      )
                                          )
DEFENDANT.                                )

## MEMORANDUM IN RESPONSE TO BOA'S MOTION TO DISMISS FOR SUMMARY JUDGMENT.

Plaintiff Emeka S. Eke, by PRO SE, submits this memorandum in support of

Its response to BOA's Motion to dismiss for Summary Judgment pursuant to

Federal Rule of Civil Procedure 12(b)(6).

### BACKGROUND

1.    Mr. Eke inherited 95% of the Foreign Currencies from his mother who

passed away couples of years ago, the rest of the Currencies were purchased

through his sister over the years who travels over seas from time to time.

2.    Mr. Eke's mother, grand mother, father and grand father on his mother's side were all in the Foreign Currency business even before he was born. He is a United State Citizen Since January 30th, 1995 and has worked for the state government for over ten years, in all those years have never been involved in any fraudulent activities as alleged by BOA  Nor does he have any criminal record.

3.    Mr. Eke has been a customer of BOA since 2003 until his account was closed without his knowledge and was never given a reason for closing his accounts and was denied access on BOA's website and was unable to view and print his bank statements after December 20th, 2006 two months later BOA closed his both accounts and reported him for Suspected of Fraudulent Activities not once but twice on both his savings and checking accounts and exposed his Social Security Number for other agencies on the same report. See (Exhibit D).

4.    Mr. Eke savings did not have any negative balance when BOA reported it for fraud, and his checking account was closed as well due to an over draft fees caused by BOA after they intentionally removed his funds and charged Mr. Eke all types of fees including fees that are not part of the

deposit agreement. (1.) See Deposit Agreement. (Exhibit. F. Pg.)

5.     When a customer's account is over drafted, it is up to the bank to: (A.)

Pay for the transaction, (B.) Charge a fee for paying those transactions; Or

(C.) Return the transaction and charge a fee, (D.) Pay for the transaction

without charging a fee, or (E.) return the transactions and not charge a fee,

the bank has such right to do whatsoever it pleases because they could do all

that and get away with it. See BOA'S (Exhibit F. Pg.12.)

6.     The reason Mr. Eke's account was over drafted in the first place was

because they owed him over $20,000 dollars on his checking and after BOA

acknowledged their mistakes and dismissed their own lawsuit, Mr. Eke

waited for months to have his checking account credited but was never

credited and refused to take false information from his credit report after
him

wrote and requested those information to be removed, BOA responded that

the report will remain on his credit report.

7.     Secondly, an over draft account is not a criminal offense nor a reason

to report Mr. Eke for Suspected of Criminal Activities even after BOA knew

it was not a Criminal Activity, as of yet Mr. Eke have not received his over

$4.5 million Dollar worth of Foreign Currencies deposited since December

2006, nor has he received over $20,000 Dollar worth of Foreign Currencies

deposited on his checking that BOA dismissed in April 27th, 2009 with

(PREJUDICE.)

8.      This is the United State of America. Since 2003 through 2007 when

Mr. Eke found out his account was  closed and his funds were removed

intentionally without his knowledge  and was denied access to find out what

happened to his Foreign Currencies, there's never been any fraudulent or

irregularities on his account or bank statements and BOA has never disputed

the amount deposited and never any changes on bank statements as of today.

Mr. Eke has made several attempts from the first day he realized his account

was not properly credited, and still shows as pending transactions when he

pull up his account from the website.

9.      Mr. Eke called the Foreign Currency department on December 15th,

2006 after returning from business trip in Canada and was told his Foreign

Currencies was sent back to his local branch to be processed in person due

to Germany Currencies are now under European Union and the Egyptian

Pounds MUST be processed in person at banking center.

to be sent back to Crater Road Petersburg Virginia by Federal Express and

not individually as alleged by the defendant BOA.

## STANDARD OF REVIEW.

10.    Defendant BOA have not shown how plaintiff Pro Se, Emeka Eke's complaint fails to meet Standard of Review and therefore the Motion to dismiss should be denied.

11.    Summary judgment is to be denied when there is a genuine issue of material fact by a non-movant. To succeed in a motion for summary judgment, a movant MUST show (A.) That there is no disputed material issues of fact. (B.) That the movant is entitled to judgment as a matter of law. See Fed. R. Civ. 56.1.

12.    The Defendant does not have any meaningful motions for summary judgment. They provided the same documents years ago and after the defendant found that there was no merit to their claim filed with the circuit court in February of 2009 including this so called alleged hand written letter and after reviewing all the facts they dismissed their own lawsuit with prejudice.

13.    During this discoveries Mr. Eke found the same documents presented by Corporate Investigator Linda Gill and the was no way she could have gotten those if it was not given to her by BOA 's Attorneys.

14.    In it's November 10, 2009 Order on defendants motion to Dismiss Mr. Eke's complaint (the "Order"), the court ruled in favor of plaintiff based on facts presented on all FOUR COUNTS, held that Mr. Eke had

sufficiently alleged his claims. Nothing has Changed since then and nothing will change except to ask the court to award Mr. Eke the remaining half of the breech of contract previously ruled in favor of the defendant Bank of America because of the removal of plaintiff's currencies not to gain interest.

15.     Discoveries is now over, the evidence provided during this discoveries which defendant intentionally failed to provide to the court will again show that the court's decision should be affirmed and whatever other punitive penalties it pleases the court to add to plaintiff's complaint.

## SUMMARY.

16.     BANK OF AMERICA acted in acts of malice, in so many different ways maybe the plaintiff may or may not be able to prove malice with all the defendant lawyers, but he sure can prove bad intentions, false advertisements, fabrication of the documents on their statements, slanderous statements made by Corporate Investigator Linda Gill and the rest of BOA'S witnesses sworn statements, given a false statement to the court as part of an exhibit, printing a false statement to the Postal Inspector General to paint Mr. Eke as a criminal, or conducting criminal activities in an effort to gain information from the postal inspector Office General and defendant statement was contradicting and damaging- IN VIOLATION OF RULE

(11b) of Federal Rules of Procedure, on deceptive practices, printing false

sworn statements by Ms. Linda Gill and by Ms. Crabtree, by stating that Mr.

Eke's Foreign Currencies was Devalued, Non-Negotiable, that his account

was closed on 2/7/06, that BOA never reported any information regarding

plaintiff's Checking or Savings account to Early Warning, and that the last

deposit made to Mr. Eke's Custom savings of over $4.5 million Dollar in

Foreign Currencies was mailed out on 12/05/2006 but the Egyptian Pounds

and rest of the other Foreign Currencies deposited at Mr. Eke's Customs

Savings Account could not have been processed and then mailed out on

December 5th, 2006.

17.    Mr. Eke's deposit happened on Friday 5th, 2006, the  6th, and 7th, was

on a weekend, and no business on weekends per Mr. Eke's Deposit

Agreement. See. (Exhibit. F. pg.28.)

18.    We know now during this discoveries that Mr. Eke's Foreign

Currencies were never even processed at the location were he made the

deposits, all his Foreign Currency Deposits were processed in another city,

one of the documents provided by BOA shows Richmond Virginia  and

those documents were never provided to this court nor the rest of the

documents they failed to provide to the court, the actual copies of Mr. Eke's

ATM deposits he provided to OCC, Mr. Stephen C. Piepgraos  including

Foreign Currency transactions to show that he had internet web account as
well as paperless bank statements with BOA and electronic mailing and
could not have gotten any Currency in a regular mail if they were mailed at
all as alleged by BOA.

19.    On December 15th, 2006, Mr. Eke contacted the Foreign Currency
Department and they informed him that BOA only uses FEDERAL
EXPRESS to ship their Foreign Currencies @ 1-877-240-6886. All the
phone records will be provided per Court request due to privileged
Information.

20.    Mr. Eke is asking the court to investigate the process of shipment of
customers Foreign Currencies and if it is possible to put them in an
ATM or REGULAR envelope as alleged repeatedly by the defendant, and
regardless of how of their alleged excuses, it is NEGLIGENCE not to secure
the mailing of the Foreign Currencies as the court is now aware that mailing
a Foreign Currency can never be compared to checks or other excuses
alleged by the defendant BOA.

21.    BOA provided copies of alleged fax backwards, date and time
backwards, the time of fax alleged to be at some 3:15am in the morning,
another documents of the same receipt showing the same name, date, time

twice on the paper.

See (BOA 00028) , also See (pg. 4 of 12 of BOA's document filed on

01/21/2010 and 02/ 02/2010 a copy BOA Attorneys sent to me. BOA

also provided documents unable to read, including Videos showing the

alleged Mr. Eke but not on the day of the actual deposits he requested.

22.    During the interrogatory process Mr. Eke requested Video of the day

he came to the bank to get his bank statements after several months of BOA

refused to provide him his bank statements. The Defendant  also provided

two documents of the same information, this document was a receipt of

currency purchase that was not part of the deposit but were listed

on their chit sheet as a deposit but still did give it a value, if they would

have provided those videos requested by Mr. Eke it would showed once and

for that he could not have received his bank statements in the mail as

alleged by the defendant. According to the agreement, BOA can save

documents including videos in the storage for more than seven years. This is

a deceptive practice to hide a critical evidence.

23.    BOA provided some chit sheet See ( Exhibit 6) they provided few

weeks just before the deposition formulated by the defendants lawyer Mr.

Lacy and he admitted during the deposition hearing that it came from his

law firm but still BOA stated on that chit sheet that Mr. Eke's deposits from

11/20/2006 through 12/01/2006 was only worth $11.00 U.S. or less.

24.    A $4.5 million in the United Dollar is now worth less than $11.00 US

Dollar alleged by BOA after all this years and as of today there's no

disputed amount of the ATM made in 2006 or any corrections made on his

bank statement, but on the same CHIT sheet provided by Mr. Lacy.

It states that:

25.    (A) (" BANK OF AMERICA DOES NOT HAVE COPIES OF THIS FOREIGN

CURRENCIES, BUT A DOCUMENT THAT MR. EKE PROVIDED TO BOA

INDICATES THIS TYPE OF CURRENCIES.") (00094.)

26.    (B.) (BANK OF AMERICA DOES NOT HAVE COPIES OF THIS

CURRENCIES AND THUS CANNOT DETERMINE FOR CERTAIN THEIR U.S.

DOLLAR VALUE.") See. (exhibit. 8)

These are some of the documents that Mr. Piepgraos provided to the

defendant included documents containing the actual deposited receipts, but

the defendant failed to provide them to the court. See (Exhibit. 10.) letter

from Mr. Eke to him and list of some of the Foreign Currencies he deposited

in 2006.

## CONVERSATION

27.    Mr. Eke spoke with Mr. Lacy BOA'S Attorney on Monday February

8th, 2010 for about twenty minutes to require more about phone records

provided by Linda Gill. Mr. Lacy stated that Mr. Eke will need the judge's order to request for the rest of the phone records and there should not be a reason to request for the phone records. Mr. Eke advised him that he requested for the phone records since October, 2009 and again during the discoveries after Linda Gill Corporate Investigator for BOA submitted an affidavit of the alleged phone conversations. Mr. Eke added that if the defendant could provide the phone records alleging such conversations on January 17th, 2007, she should also provide phone records for the rest of her alleged statements.

28.     Mr. Eke asked Mr. Lacy if he knew Mr. Stephen C. Piepgraos who represented BOA on the WARRANT IN DEBT complaint filed by Mr. Eke on July 2[nd,] 2007. Mr. Lacy said yes that he knows him and his office is not far from his.

29.     Mr. Eke then stated to Mr. Lacy that all the documents except the hand written fax alleged by Linda Gill was given to the defendant Mr. Piepgraos, Mr. Lacy denied that Mr. Piepgraos ever gave him or any one else documents sent to him by Mr. Piepgraos in 2008. See (Exhibit. G) but the letter he sent to Mr. Robertson, Mr. Eke's Attorney at the time stated otherwise.

30.     The letter stated about documents Mr. Eke sent to his coleauque Mr.

Piepgraos, it included all the documents Mr. Eke sent to Mr. Piepgraos that
Linda Gill have as well without the alleged fax hand written letter.

31.    The party's contract does not have any instructions on mailing
Foreign Currencies, or what to do in the event it was lost in the mail or how
the foreign Currencies should be processed, but all those information should
be found on BOA'S website including the maximum daily deposits at their
ATM.

32.    Furthermore, Mr. Eke would not have opened an account with Bank
of America or any bank if he was advised to sign an aggreement stating that
his Foreign Currencies that is worth over $4.5million in US Dollar will be
mailed regular, or U.S. mail with no way of tracking it and will be put on an
envelope the same size envelope found at the ATM. (EXHIBIT. F. pg.26) of
Mr. Eke's Deposit Agreement and Disclosures under Foreign Currency.

33.    On September 7,2002, plaintiff opening "MYACCESS
CHECKING" see (exhibit A)  from defendant's own exhibit, with BOA.
Account Number 004118486567.On August 15th, 2003, plaintiff ADMITS
opening an interest bearing "CUSTOM SAVINGS" see ( exhibit B ) from
defendant's own exhibit. Account Number 004129800284. On November
20th, 2006, plaintiff ADMITS depositing foreign currencies into an ATM at

South Crater Road, Petersburg Virginia 23803 and was credited accordingly per his bank statement and have provided receipts of that days deposits including Countries deposited during this discoveries. See (Exhibit 1.) of plaintiff's complaint.

34.    Plaintiff OBJECTS to the Foreign Currencies alleged by the defendant on November 20th, 2006, they are not part of the deposit and does not add up to the actual receipts provided by the plaintiff. An objected chit sheet was provided during this discoveries by the defendants law firm Mr. Lacy. See ( exhibit 2.) from plaintiff. The defendant did not want to provide that to the court because they know the court will deny their motion, the chit sheet was formulated couple of months ago and was provided during this discoveries.

35.    On November 28th, 2006, plaintiff ADMITS depositing foreign currency in to an ATM at South Crater Road, Petersburg Virginia 23803 and was credited accordingly per his bank statements provided to him in July including the receipts defendant requested during this discoveries. See. (Exhibit 3)

36.    On December 1st, 2006, plaintiff ADMITS depositing Foreign Currencies at the ATM at South Crater road, Petersburg Virginia 23803 and his deposits was credited accordingly per his bank statements including

receipts of the deposited Countries and their credited amount by BOA.

See (Exhibit 4.)

## STATEMENTS OF DISPUTED MATERIALS

37.    Plaintiff DENIES the return of the Foreign Currencies alleged by

defendant. See paragraph 11. (Crabtree Dec. !! 20.) Plaintiff DENIES

Paragraph 12. ( Crabtree Dec !! 20). His bank statement was given to him at

the banking location in Petersburg, Virginia On May and again July 2007

By Ms. WENDY. R. CHAMBLISS on Crater Road branch location in

Petersburg Virginia. ·

38.    Plaintiff DENIES Paragraph 13. and objects to the accusations.

Plaintiff DENIES Paragraph 14, 15, of Crabtree's statement and objects to

the accusations.

39.    For the record, on those dates alleged by defendants

witness Ms. Crabtree on her sworn affidavits, Mr. Eke was out of

the country and could not have received the Foreign Currencies on any

envelop containing a Foreign Currencies alleged by BOA.

See (Exhibit.5) of plaintiffs bank statement provided to

him on July 2007, shows how long it took Mr. Eke to get his own

bank statement from BOA . See (Exhibit C) of the plaintiff's bank
statement.

This case was never closed by Linda Gill and there's no document to show that accepts her sworn statements.

40.    Mr. Lee Parker and Mr. Darren both Attorneys went to the bank location in an effort to help the plaintiff get some closure on the whereabouts of his Foreign Currency deposits. Ms. Theresa Vaughan advised Mr. Parker and his partner Darren that she will not give out any information unless Mr. Eke was present.

41.    Mr. Parker called Mr. Eke and advised him to come back to the bank. Mr. Eke Came in and advised Mr. Parker and his partner Darren that Ms. Vaughn is the person that has been given him the run around, the same person that advised him to deposit the Foreign Currencies at the ATM and Ms. Pamela Turner was present, and Ms. Vaughan is also the same person who threatened to call security on Mr. Eke when he wanted to know why he's been given the runaround, and the bank refused to give him his bank statement. At this point she stated to Mr. Parker and Mr. Darren that she can't give them any information without defendants Attorneys present.

42.    Mr. Parker advised them to provide Mr. Eke his bank statement.

43.    Mr. Eke explain to Mr. Parker that each time plaintiff came to the bank requesting for his bank statement, Ms. Wendy R. Chambliss Theresa

Vaughan advised Mr. Eke that they can not access his account or give out

any information per instruction from RISK Department, that Mr. Eke's

account is under investigation with the Risk Department and will not give

out any information his account. Mr. Parker advised Ms. Theresa it is Mr.

Eke's civil right to get his bank statements regardless of the investigation.

44.    Mr. Eke received his bank statement from Ms. Wendy R. Chambliss

she informed him to come to the bank and pick up his bank statements

printed in May, and July, 2007. It has the phone number and name of the

person who faxed the documents to Ms. Who gave it to Mr. Eke.

45.    The Video Camera can verify all this information and Mr. Robertson

requested the production of the Videos and the defendant refused to provide

those videos including the all records from 12/20/06 through 3/3/07 will

show that the plaintiff was still talking to the defendant BOA up to the point

of filing a complaint with the District Court in Petersburg Virginia.

46.    Mr. Stephen Piepgraos was defendant's Attorney who could not

wait to leave the court room after the judge instructed Mr. Eke to file his

case with the Circuit Court due to the amount Mr. Eke was seeking. See

(Exhibit 6.) Mr. Eke contacted the Attorney for BOA Mr. Piepgraos some

time in April of 2008 in an effort to get BOA credit my account. Important

documents was sent to him after the conversation with the plaintiff and a

letter in support of the conversation. Documents of some of the deposits

made in 2006 including a documents to show that Mr. Eke has paperless

account and has access to do internet transactions including instructions

from BOA's website with details of how BOA process their Foreign

Currencies with their customers but for some reasons, those documents were

never provided to the court during this discoveries, instead BOA only

provided documents that was not part of the deposits, those documents were

sent to show that the plaintiff did have access to the internet and have done

transactions on BOA websites but was denied access to use the website after

he started inquiring for his Foreign Currencies and his bank statements.

47.     In response to all the communications between Corporate investigator

Linda Gill and many other personnel in the fraud department including the

Foreign Currency department was an effort to locate or to find out

what happened to his deposited Foreign Currencies and at no time did Mr.

Eke said to Linda Gill that he received the last package contauning the

Egyptian Pounds, those statements are fabricated and un true including the

allegation made by her, alleging that on 1/04/2007 Mr. Eke told her he

was taking her daughter to the Emergency Hospital and that is one out

of other slanderous statements in this proceedings, including the phone she

alleged Mr. Eke called her on 1/17/2007 alleging telling her he received his

Egyptian Pounds. See (Exhibit. J.) Mr. Eke will let the court decide on the

merits of the slander complaint alone.

48.    In addition to her lies and sworn Affidavits (PAR.19) She

stated that 'Based on Plaintiff's admissions that he received the Foreign

Currency that BOA returned to him by U.S. Mail, I closed my investigation

into this matter.'

49.    Deposition is now completed but not once did Mr. Eke received any

documents of closure of her investigations to this Court or to OCC

including copies of BOA's response to OCC except her sworn statements.

50.    She also stated that the fax sent to her by Mr. Eke was sent on January

5th, 2007 at 03:52 am. Mr. Eke is asleep and will never fax any documents to

any one at that time. Mr. Eke does not even have Linda Gill's fax number

and does not have a reason to request for one. The same sworn statements

that Ms. Crabtree provided to this court stating that Mr. Eke's account was

closed on a different date from his bank statement and Mr. Eke was reported

once to ChexSystem Inc and Early Warning LLC and stating that the

Foreign Currencies were processed by her or some another person.

51.    Mr. Eke was reported to the ChexSystems Inc and Early Warning

LLC two different occasions; exposing his Social Security Number. Mr. Eke

did not sign an agreement with BOA for them to print his Social Security

Number on ChexSystems when they could have used his account number.

They should be liable for their negligent in this matter. First report

was on 2/07/07 and on 2/13/07. See. (Exhibit D.2pgs.) Mr. Eke made

several attempts by contacting all the agencies that was aware of the alleged

liable report on his credit report with no result.

## RESPONSE TO ARGUMENT

## COUNT 1 CONVERSION

52.    Paragraph 1 through 51 of the complaint are hereby incorporated by

reference as though set out in full in Count 1 of Mr. Eke's complaint.

53.    Mr. Eke deposited Foreign Currencies into BOA's ATMS totaling

over $4,366,146.78. On November 20th, 2006, November 28th, 2006,

December 1st, 2006 and December 1st, 2006 BOA accepted each of Mr.

Eke's Foreign Currency deposits and reduced each of the same to it's

exclusive dominion and control. Mr. Eke's Foreign Currency deposits, each

determined by the Bank to be equivalent to a specific United States dollar

value was recorded as being deposited into Mr. Eke's checking and savings

account. See. (Exhibit. 1-4) (a,b,c.), the documents Mr. Lacy provided to

plaintiff's Attorney during discoveries.

54.    BOA or it's agents have continued to maintain exclusive dominion

and control over Mr. Eke's Currencies. See. Exhibit. 1-4(A&B) It shows method of how Mr. Eke's deposit was credited but due to bank's Negligence they were left for their investigative purposes and were credited but not the whole amount.

55.   Mr. Eke has made numerous demands for the return of his Currencies or it's equivalent value in U. S. dollars. BOA has repeatedly failed to answer Mr. Eke's demands. The ATM transactions of 11/20/06 were not credited accordingly at the time of deposit but is corrected after the Bank awarded back Mr. Eke's $20,000+ the bank have failed to credit his checking account. See; Dismissal Order. (Exhibit. H.)

56.   The ATM transactions of 11/28/06 were credited according to his bank statement and changes have been since the deposits. The ATM transactions of 12/01/06 made to Mr. Eke's Checking Account were credited accordingly and no disputes on his July 2008 bank statement he received from BOA. See. Bank Statements. (Exhibit C.)

57.   All the Foreign Currencies deposited at the ATM in 2006 was converted at BOA websites except for two, GERMANY CURRENCIES AND EGYPTIAN CURRENCIES and those currencies were supposed to be processed in person at the banking location in the first place but was told by the assistant bank manager Ms. Theresa Vaughan to deposit all the

Currencies at the ATM due to lack of time and the size of the Currency.

which was on Mr. Eke's Deposit Agreement supports ATM
TRANSACTIONS?

which includes all internet transactions, it also allows unlimited access to

check your balances, Pay bills and accepts electronic bank statements. etc.

See (D.A.A.D.) Deposit Agreement And Disclosures. Access ID, On Line Banking

And Bill Payment Services And Electronic Banking Disclosures, which Mr.

Eke is authorized to use, including instructions on ordering and selling

Foreign Currencies on line with all the instructions that comes with on line

banking. See. ( Exhibit F. Pg.8 & 13.)

### ON LINE BANKING AND BILL PAYMENT SERVICES

58.    (A) "You may use your computer to obtain account information and

make certain transfers and to pay bills. When you subscribe to these

services, we provide you with an agreement and disclosures for the service

and link your eligible accounts." (B.) " Our free Online Banking service

allows you to check balances, track account activity, pay bills and more.

(C.) With Online Banking you can also view up to 18 months of this

statement online and turn off delivery of your paper statement". Enroll at

www.bankofamerica.com, which Mr. Eke did and therefore could not have

received his Foreign Currencies in the mail if it was mailed at all.

See. (Exhibit. C.)

59.     Under Virginia law, " Conversion is the wrong assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." Economopoulos vs. Kolaitis, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000).

60.     Conversion includes any distinct act of dominion wrongfully exerted over property that is in denial of, or inconsistent with the owner's right. United Leasing Corp. vs. Trift Ins. Corp; 247 Va. 299, 305, 440 S.E.2d 902, 905(1994). To maintain an action for Conversion, the movant must " have a property interest in and be entitled to the immediate possession of the item alleged to have been wrongfully converted." ( citing United Leasing, 247 Va. At 305, 440 S.E.2d at 906).

61.     What BOA assumed dominion and control over was in fact the plaintiff's Foreign Currencies, not money. The defendant Attorney states in their motion to dismiss (MTD), that "in November and December Plaintiff, on four different occasions attempted to deposit various types of Foreign Currencies into a BOA automated teller machine an ("ATM") in Petersburg, Virginia." MTD (p.1 prg.2). They further states that upon its physical inspection of the deposits, however, BOA determined that the Foreign

Currencies were non-Redeemable, Non-Negotiable and Devalued.

MTD (p2 parg2). Also See Exhibit.(o.) Notice of what determines a Country's Foreign Currency Devaluation.

62.    If the four deposit attempts were indeed unsuccessful, then Mr. Eke's

foreign Currencies could not have been converted to actual money. If the

Currencies were not converted, but in fact rejected, then the property in its

unconverted form remains that of the true owner, not BOA.

63.    The defendant BOA alleges that it returned what equivalent was to

over 4.5 million dollars in Foreign Currencies to Mr. Eke by regular mail in

an envelope so proudly alleged by Ms. Linda Gill and that he received them

per their conversations. It offers no proof of the mailing especially when Mr.

Eke was on a business trip during this alleged mailing of his Foreign

Currencies. In addition, the dates she alleged it was mailed are not believable.

It is impossible to process the Currencies on those days BOA alleged they

were mailed.

64.    They could not have process the Currencies deposited on 12/01/2006

at Mr. Eke's Custom Savings made after business hours on Friday when

Saturday and Sunday are non-business days and Monday was December 4th,

2006. According to the documents BOA formulated during this discoveries,

some or all of Mr. Eke's Currency were processed in another city or state.

**BUSINESS DAYS.**

"Our business days are Monday through Friday, including bank holidays. We may switch from one business day to the next business day before the end of the calendar day. Hours of the business day for any given banking center are available at the banking center. See. (Exhibit. F. pg.28). Also on BOA websites, "Deliveries are not available on SATURDAYS". (A) "BOA USES EXPRESS COURIER TO SHIP ALL OF YOUR FOREIGN CURRENCY PACKAGES. (B). THE EXPRESS COURIER WILL REQUIRE YOUR SIGNATURE UPON DELIVERY." © Only one delivery attempt will be made, ETC.

See. (Exhibit. I).(8 pages). Moreover, the BOA Deposit Agreement does not grant

BOA the right to refuse by returning Foreign Currencies to a consumer by

regular U.S. Mail. Linda Gill Corporate investigator on her sworn statement

alleged that Savings account deposits made on 12/01/2006 was mailed out

on December 5th, 2006, but the capture date was dated on 12/05/2006 these

documents were never provided to the court because it will show that none

of Mr. Eke's deposits were never mailed in the first place.

65.    Due to the fact that the plaintiff did not deposit money into his BOA

account, the cases relied upon by BOA to support its Motion to Dismiss are

not controlling. If the case law is not controlling, BOA's Motion to Dismiss

should be denied and Mr. Eke should be awarded all the amount on his

complaint on record.

66.    WHEREFORE, your Plaintiff PRO SE moves this Honorable Court

for Judgment against the Defendant, BANK OF AMERICA f/n/a NATIONS,

BANKING CORPORATION, in the sum of $4,366,146.78 or it's present

day value of $33,280,566 if sold back to private dealers with interest on the

principle balance at 6% per annum from December 1st, 2006 until paid, and

all costs associated with this proceeding. See. Exhibit. (1-4a-c)

## COUNT 2 BREACH OF EXPRESS WRITTEN CONTRACT.

### BOA Breech the deposit agreement in many ways by not returning Mr. Eke's Foreign Currencies.

A contract is a legally enforceable agreement between two parties. Each party to a contract makes a promise to either perform a certain duty or pay a certain amount. If one party fails to act as promised, and the other party has fulfilled the duties under the contract, the other party is entitled to legal relief.

67.    Paragraph 1 trough 66 of the Complaint are hereby incorporated by

reference as though set out in full in Count 1 and 2 of the plaintiff's

Complaint.

68.    The deposit agreement on page 26 as alleged by defendant did not say

anything about a Foreign Currency by mail if it did then bank of America

will be in voilation of deceptive practices. You will never see any section of

the agreement in reference to a Foreign Currency deliveries sent by regular

mail or without some type of insurance, except as advertised on BOA's

Website. See. Exhibit. (I.)(8pgs.) and (F.) (Pg. 12-14)

Methods Bank Of America uses for Foreign Currency Transactions With their Customers including, Mailing and Crediting of Customers Account Per (FMS) Instructions  See. Exhibit. (J) Par. (6020.10a-d) (6020.20a-c) and (6020.30) of (FMS) FINANCIAL MANAGEMENT SERVICES. A BUREAU OF THE UNITED STATES DEPARTMENT OF THE TREASURY.

69.    Mr. Eke entered into an agreement with the BOA for financial

services. The agreement established the Bank as debtor and the Plaintiff as

Creditor, the Bank agreed to pay the plaintiff interest on his 'Custom

Savings' and 'MYACCESS Checking'.

70.     There are no provisions in the Deposit Agreement that permit's the

return of Mr. Eke's property by regular mail or Mr. Eke would not have

signed an agreement or deposited his Currencies if such contract exits.

71.     The defendant is quiet aware of the process of mailing a Foreign

Currencies, those documents were part of the documents Mr. Eke sent to Mr.

Piepgraos Attorney for BOA on the Warrant In Debt case. He provided those

documents to Mr. Lacy. In addition, during the deposition on December,

2009 some documents was provided to Mr. Lacy but he failed to provide

those documents to the court.

### FOREIGN CURRENCY TRANSACTIONS.

Delivery. A signature is required for all deliveries. For Foreign Currency Orders over $1,000 MUST be picked up at a full service Bank of America banking Center. See. (Exhibit. I) step 3:

72.     The defendant BOA's Deposit Agreement does not place a dollar

restriction on deposits, nor does it require its customers to make deposits in

person at a BOA banking Center. To demand that plaintiff do so is a breach

particularly when the Deposit Agreement makes ATM services available.

See. Exhibit F. (D.A.D.) (pg13&14) (1.) ELECTRONIC BANKING SERVICES.

(2.) DISCLOSURES. (3.) ONLINE BANKING AND BILL PAYMENT SERVICES.

The defendant BOA has provided conflicting statements over and over

again as to the status of Mr. Eke's deposits once received. The defendant

BOA states the following in its 6/8/08 response to OCC inquiries:

73.     Bank of America has conducted an investigation of the customer's

complaint. Mr. Eke deposited Foreign Currency at the ATM on or about

12/1/06, declaring the U.S. Dollar value of those single deposits to be sum
of

$4,344,166.81 as reflected on the account statement provided to him in May

and July, of 2007 by Ms. Wendy R. Chambliss and there's has not been any

disputes on Mr. Eke's bank statement. BOA stated that the currencies were

returned to him via U.S. mail due to the large dollar value he declared, with

instructions to deposit the currency in person at a (BOA) banking center.

74.     The 6/18/08 statement acknowledges that Mr. Eke's Foreign Currency

deposit was made and that BOA assigned value to the Foreign Currencies to

the sum of $4,344166.81. The defendant BOA later received another inquiry

from the OCC. The defendant's 11/21/08, response to the very same inquiry

is completely different from its 6/18/08 response. It states in relevant part:

75.     " The Currency was determined to be non-redeemable and devalued

and was returned to the customer by first class mail to the address of record

for the customer, following the Bank's standard practice." This response was sent to the OCC in November- Five months after the initial response was sent to the OCC.

76.     Both statements simply can not be true when addressing the same exact transactions. If the matter was investigated and conclusions drawn as to the disposition of Mr. Eke's $4,344,166.81 Foreign Currency claim in June 2008, then there are no reasonable facts that could possibly result in such a substantial change in the November 2008 BOA response. The two explanations are in conflict and cannot possibly be reconciled.

77.     The defendant BOA's response or accounts for the status of the 11/20/06 that was only credited for $1,760.72, 11/28/06 $10,892.72 and the 12/01/06 $9,326.53 deposits which were all removed after BOA conversion and crediting Mr. Eke's account. They are still unaccounted for since the dismissal of over $ 20,000 BOA removed from Mr. Eke's account and has credited his account including the rest of his deposits as of yet.

78.     BOA have failed to show how the Foreign Currencies could have been processed separately, but Mr. Eke was advised that all the Currencies were all together and was sent back to the local bank to be processed in person. At no time did Ms. Theresa Vaughan said to Mr. Eke that his Foreign Currency deposits were mailed individually.

79.   The two deposits made on 12/01/06 to checking and savings account

happened the same day but less than ten minutes apart on a Friday. So those

two Currencies were processed the same day according to the documents

BOA provided during this discoveries. See. Exhibit. 1-4(a-b)

80.   In addition all the ATM deposits on 11/20/06 through 12/01/06 was

never rejected, was no notice stating that his currency deposit was Devalued

or Non-Negotiable.

81.   The only item of Non-Negotiable notice on Mr. Eke's

bank statement and the document prepared by Ms. Shelly in Richmond

Virginia was the 11/20/06 deposit BOA held for almost one month, reasons

unknown. That particular deposit was part of Mr. Eke's original complaint

with Sussex County on July, 2007 for $22,700 including court fees and

other fees chaged against Mr. Eke's account. See. Exhibit. 10. After the

judge advised Mr. Eke to file his claim with the circuit court, BOA filed

their own complaint without merit, but the thereafter dismissed their own

claim. Mr. Eke will file a separate claim based on the out come of the

present complaint in the Federal Court if the court will permit.

See. Exhibit. (H&K). "warrant indebt and Dismissal Order".

82.   WHEREFORE, YOUR PLAINTIFF PRO SE request the court to

deny defendant's request to dismiss and moves this Honorable Court for

judgment against the Defendant, BANK OF AMERICA f/n/a NATIONS

BANK, A BANKING CORPORATION, in the sum of $4,366,146.78 with

0.20% interest on the principle balance, which is his reasonable expectation,

from December 1st, 2001 until paid, and the cost associated with this

proceeding.

## COUNT 3 LIABLE OR SLANDER

83.    Paragraph 1 through 82 of the complaint is hereby incorporated by
reference as though set out in full in Count 1, 2 and 3 of the plaintiff's
complaint.

### SUSPECTED FRAUD ACTIVITIES.

When a party alleges fraud, it must plead the facts of the alleged fraud with particularity.
See. (FRCP 9(b).)
Fraudulent Activities is an intentional deception made for personal gain or to damage another
individual. FRAUD IS A CRIME AND A CIVIL LAW VIOLATION. BOA accused plaintiff of
committing this type of act on his account without any legal prove.

84.    On or about 2/07/2007, BOA accused Mr. Eke of Suspected Fraud

activities and reported the same to ChexSystems and Early Warning

Services, LLC. See exhibit. D.(pg.1). On or about 2/12/07 BOA forced
closed Mr. Eke's account alleging that Mr. Eke's account was overdrawn in
the amount of -$20,815.18 on his checking. BOA also closed his savings
account with a ZERO balance for no reason. See. Exhibit.

85.    On or about 2/13/07 BOA again accused Mr. Eke of Suspected Fraud

Activity with ChexSystems and Early Warning Services, LLC.

See. (Exhibit. D.)(2pgs.)

86.    ChexSystems provides deposit account verification verification

services to its financial institution members to aid them in identifying

account applicants who may have a history of account mishandling.

87.    ChexSystems published the information provided by BOA which

resulted in a refusal of Mr. Eke's checks, opening a bank account with

companies using ChexSystems check verification services. See. D.(2pgs.)

88.    Early Warning Services is a limited liability company owned by Bank

of America, BB&T, JPMorgan Chase and Wells Fargo. Early Warning helps

organizations obtain a single view of Fraud Activity across the interprise

and manage Fraud on a cross institution basis.

Mr. Eke demanded BOA and their Risk Agencies to produce evidence of

Suspected Fraudulent activity so that he could dispute the evidence.

89.    On or about 2/27/09 the BOA sued Mr. Eke in Sussex County,

Virginia Circuit Court. See. (Exhibit. G) The bank lawsuit stated that the

plaintiff was indepted to BOA in the sum of $20,815.18.

90.    On or about 4/27/09 the Sussex County Circuit entered an order

dismissing Bank's complaint with prejudice. (See. H.) BOA has continually

With held Mr. Eke's $20,815.18 in Foreign Currency and has failed to return

the same to Mr. Eke.

91.    Even though the matter has been dismissed with prejudice, the bank

refuses to remove damaging and false information from Mr. Eke's financial

records via ChexSystem and Early Warning Services, LLC. BOA has not

provided any documents to show removal of such report on his credit report,

even if they did, the fact that they intentionally reported a false information

serious enough to prevent him from opening accounts not once at list four

deferent occasions, have resulted in Mr. Eke filing this lawsuit.

92.    Mr. Eke demanded Bank of America to produce evidence of

suspected Fraudulent activity so that Mr. Eke could dispute the evidence.

Mr. Eke received a letter from Mr. Quinton Brown an associate with

WACHOVIA BANK confirming just one out of the incidents that BOA put

Mr. Eke through for over two years in his credit report. See. (Exhibit. 'M'.)

and he will be willing to testify per courts request.

93.    On April 1st, 2009 Mr. Eke received a response from BOA's Risk

Identification Support Center, stating that " We have performed a detailed

review of the accounts and found that the reason for closure is accurate.

Therefore, the decision to end the account relationship and the reporting to

ChexSystems, Inc and Early Warning Services, LLC is accurate and will

remain in effect." A copy was sent to Early Warning Services, LLC. See,

(Exhibit. L.) BOA stated on their affidavits signed by Mary Jane Couture,

she stated that BOA never reported any information regarding plaintiffs

Checking or Savings accounts to Early Warning Services, LLC. See.

(Exhibit. E.) Courture Dec. parg.7. The letter sent to Mr. Eke completely

stated otherwise in cluding a (cc) copy sent to (E.W.S., LLC.)

94.    WHEREFORE, your plaintiff moves this Honorable Court for

Judgment against the Defendant, BANK OF AMERICA f/n/a NATIONS

BANK, A BANKING CORPORATION, in the amount of $15,000,000.00 in

compensatory damages and 6% interest on the principle balance, untill

judgment is paid, and $350,000.00 in punitive damages and the cost

associated with this proceeding.

## COUNT 4 NEGLIGENCE.

95.    Paragraph1 through 80 of the Complaint is hereby

incorporated by reference as though set out in full in Count 1,2,3 and 4 of

the plaintiff's Complaint.

96.    During the period of 11/20/2006 through 12/01/2006, Mr. Eke

deposited $4,366,146.78 in Foreign Currency into his active checking and

savings account held with the BOA.

97.    The bank assumed the duty to protect Mr. Eke's property from loss by

virtue of its acceptance of the Currencies. The Bank credited Plaintiff's

checking and Savings account with the Foreign Currency equivalent in U.S. Dollars.

98.   Bank Of America alleged that it placed the equivalent of over 4 million dollars of plaintiff's money.

99.   BOA breached its duty when it failed to properly safeguard over 4 million dollars of Mr. Eke's money.

100.   The plaintiff has not received his Currencies in the mail as alleged by defendant nor has BOA given him credit otherwise. The plaintiff has suffered losses as a result of BOA's actions.

101.   Mr. Eke has suffered mental anguish, nervous disorder, suicidel tendencies and depression as a derect result of BOA's negligence, accused of Suspected Fraud Activities and due to breach of contract caused by the bank.

102.   Mr. Eke lost his dwelling to forclosure, unable to open bank account with all the banks that uses ChexSystems.

103.   Mr. Eke was unble to concentrate at work and due to side effect caused by the medications, he lost his job for post abandonment.

104.   Mr. Eke has been under doctor's care on pricribed psychotropic drugs and mood stabilizers, due to severe emotional distress caused by the bank.

105.   WHEREFORE, your plaintiff request that the court should deny

defendant motion to Dismiss and moves this Honorable Court for judgement

against the Defendant, Bank OF AMERICA f/n/a NATIONAL, A

BANKING CORPORATION, in the sum of $25,000,000 in compensatory

damages and 6% interest on the principle balance, until judgment is paid,

and $350,000.000 in punitive damages and the cost associated with this

proceeding.

106.   I Mr. Eke Plaintiff Pro Se do declare that the information, documents

and witness documents including all references according to Federal Rule of

Civil Procedure 10(c) are included and to the best of my knowledge are true

copies in this legal proceding from their original sources and witness

written documents and any other documents including phone records per

Court's request will be provided in due time.

107.   I declare under penalty of perjury under the laws of the United States

Of America that the foregoing is true and correct, and that this declaration

was executed on February 19th, 2010.

Signed: _____

Dated: 2/19/2010

## CERTIFICATE OF SERVICE

I hereby certify that on Tuesday February 23rd, 2010 I serve the foregoing

By Regular or signature mail to the following:

Michael E. Lacy.
Virginia State Bar No. 48477
Attorney For Defendant Bank Of America, N.A.
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200

2/19/2010