IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

EMEKA EKE,

    Plaintiff,

v.      Civil Action Number 3:09cv488

BANK OF AMERICA, N.A.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on motion of Defendant Bank of America, N.A. ("BOA") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Both parties submitted memoranda in support of their respective positions, and the matter is ripe for the Court's decision. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court and argument would not aid in the decisional process. For the reasons stated herein, the Court will grant BOA's motion.

### I. Background

#### A. Factual Background

On September 7, 2002, Plaintiff Emeka Eke ("the Plaintiff") opened a checking account with BOA, Account Number 004118486567 ("the Checking Account"). On August 15, 2003, the Plaintiff opened a custom savings account with BOA with an annual percentage yield of 0.20%, Account Number 004129800284 ("the Savings Account"). With respect to both accounts, the relationship between the Plaintiff and BOA was one of contract, the terms of which were governed by the "Signature Cards" and the Deposit Agreement and Disclosures ("the Deposit Agreement" or "the

parties' contract") for the two accounts. On November 20, 2006, at 8:52 a.m., the Plaintiff deposited foreign currency from Brazil, Peru, and Bolivia ("Deposit One") into an ATM located at 1963 South Crater Road, Petersburg, Virginia 23803 ("the ATM"). The Plaintiff sought to deposit these funds into the Checking Account and claimed that this deposit had a U.S. Dollar value of $1,760.72. On November 28, 2006, at 4:31 p.m., the Plaintiff deposited foreign currency from Argentina, Bolivia, Paraguay, Chile, Israel, and Indonesia ("Deposit Two") into the ATM. The Plaintiff sought to deposit these funds into the Checking Account and claimed that this deposit had a U.S. Dollar value of $10,892.72. On December 1, 2006, at 5:44 p.m., the Plaintiff deposited foreign currency from Azerbaijan, Afghanistan, Korea, Burma, and China ("Deposit Three") into the ATM. The Plaintiff sought to deposit these funds into the Checking Account and claimed that this deposit had a U.S. Dollar value of $9,326.53. Later on December 1, 2006, at 6:34 p.m., the Plaintiff deposited foreign currency from the Bank of Indonesia, Yugoslavia, Nicaragua, Honduras, Egypt, and Sri Lanka ("Deposit Four") into the ATM. The Plaintiff sought to deposit these funds into the Savings Account and claimed that this deposit, that also included British Armed Forces Pounds, had a U.S. Dollar value of $4,344,166.81.

The funds were provisionally-credited by BOA pending verification and valuation, but BOA ultimately refused to accept any of the Plaintiff's deposits of foreign currency.[1] BOA posted notice of its rejection and deposit correction of Deposits One and Two on December 14, 2006, of Deposit Three on December 8, 2006, and of Deposit Four on December 4, 2006. Having decided not to accept the deposits, BOA returned the foreign currency to the Plaintiff via first-class United States Postal Service ("USPS") mail in accordance with BOA's procedures and standard banking practice. Each

---

[1]The Deposit Agreement provides that BOA "may refuse, accept for collection only, or return all or part of any deposit." Def.'s Mot. to Dismiss, Ex. I at 20.

rejected deposit was placed in a separate envelope or package and mailed to the Plaintiff's address on file as the designated location for sending his monthly BOA account statements: Emeke S. Eke, 6361 General Mahone Highway, Waverly, VA 23890-3401. Each package contained all of the foreign currency deposited by the Plaintiff in that particular deposit, along with an "Advice of Debit" notifying the Plaintiff that the deposit had been adjusted to reflect the rejection and that his account had been debited accordingly. Each package was marked "return service requested" and printed with BOA's return address: Bank of America, TX4-213-10-06, P.O. Box 2518, Houston, TX 77252-2518. Deposits One and Two were mailed to the Plaintiff on or about December 15, 2006. Deposit Three was mailed to the Plaintiff on or about December 11, 2006. Deposit Four was mailed to the Plaintiff on or about December 5, 2006. None of the packages mailed to the Plaintiff was returned to BOA's listed Houston return address.

In late December 2006, BOA initiated an investigation of the circumstances surrounding the Plaintiff's deposits of foreign currency into the ATM. The investigation was initiated in response to a phone call that BOA received from the Plaintiff regarding the deposits. The investigation was conducted by Linda Gill ("Gill"), an employee in BOA's corporate security department. Gill spoke to the Plaintiff by telephone on several occasions, and she took contemporaneous notes of her communications with the Plaintiff. On January 5, 2007, Gill received a 12-page fax from the Plaintiff. The first page of the fax is a handwritten note from the Plaintiff addressed to Gill. The note states that the Plaintiff had received three of the foreign currency deposits that BOA had mailed to him. It further states that he received "maybe half of the notes" that BOA had returned to him. The twelfth and final page of the fax contains copies of the Advices of Debit that BOA included with the packages containing the foreign currency for Deposit One and Deposit Three that were mailed back to the Plaintiff. On January 17, 2007, Gill spoke with the Plaintiff by telephone. During their conversation,

the Plaintiff stated that he received two packages from BOA. He further stated that some of the money he received was Egyptian currency and represented that BOA had stated it was too old. The only deposit made by the Plaintiff containing Egyptian currency was Deposit Four in which the Plaintiff deposited Egyptian Piastres, a currency that is no longer in circulation.

Based on the Plaintiff's admissions that he received the foreign currency that BOA had returned to him by USPS mail, BOA closed its investigation into the matter. On or about February 2, 2007, BOA closed the Plaintiff's checking and savings accounts. At the time of their closure, the accounts were overdrawn by over $20,000. As a result, on February 7, 2007, BOA made a report to Chex Systems, Inc. for "suspected fraud activity" regarding the Plaintiff's checking and savings accounts. Additionally, BOA believed that the fact that the Plaintiff attempted to deposit foreign currency into an ATM, which he wrongfully claimed to equal over $4,000,000, was also a basis to suspect that the accounts were being used for fraudulent activity. On March 25, 2009, BOA requested that ChexSystems remove BOA's report regarding the Plaintiff's checking and savings account. To the best of BOA's knowledge, ChexSystems removed the report shortly after BOA made its request. BOA never reported any information regarding the Plaintiff's checking or savings accounts to any other reporting service.

### B. Procedural Background

The Plaintiff filed his four-count Complaint through counsel against BOA on July 6, 2009 in the Circuit Court for the City of Petersburg, Virginia seeking $64,366,146.78 in damages for (1) conversion ("Count One"), (2) breach of contract ("Count Two"), (3) slander ("Count Three"), and (4) negligence ("Count Four"). BOA noticed its removal of the matter to this Court on July 30, 2009 and filed a motion to dismiss on August 5, 2009. Unsatisfied with BOA's allegations of diversity jurisdiction, the Court ordered BOA to file an amended notice of removal properly alleging subject

matter jurisdiction under 28 U.S.C. § 1332, which BOA did on August 11, 2009. On November 12, 2009, the Court denied BOA's motion to dismiss Counts One, Three, and Four and granted in part and denied in part BOA's motion to dismiss Count Two. On December 23, 2009, the Plaintiff's attorney, Vincent L. Robertson, Sr. ("Robertson"), moved to withdraw his representation of the Plaintiff due to an "irreconcilable difference." BOA filed the instant motion for summary judgment on January 21, 2010. The Court granted Robertson's motion to withdraw on January 28, 2010, and the Plaintiff has since proceeded *pro se* in this matter.

## II.     Legal Standard

When evaluating a motion for summary judgment under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party . . . ." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). A court will grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the Plaintiff's position is insufficient to constitute a genuine question of fact. *Id.* at 252. The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III. Analysis**

BOA moves for summary judgment with respect to all four counts contained in the Plaintiff's Complaint. The Court will address each count in turn.

**A.     Count One – Conversion**

Count One of the Complaint alleges that BOA unlawfully converted the foreign currency contained in Deposits One, Two, Three and Four. To assert a claim for conversion in Virginia, a plaintiff must prove by a preponderance of the evidence (1) the ownership or right to possession of the property at the time of the conversion and (2) the wrongful exercise of dominion or control by the defendant over the plaintiff's property, thus depriving the plaintiff of possession. *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 1997). In its Order of November 12, 2009, the Court found that the Plaintiff's deposits – deposits that the Plaintiff attempted to characterize as either the legitimate sale of foreign currency or "special deposits"[2] – were "general deposits" whereby the funds deposited became the property of BOA during their pendency as provisionally-credited funds, and a debtor-creditor relationship arose between the Plaintiff and BOA. Accordingly, a claim for conversion could not lie against BOA for its actions taken up to the point of rejecting the funds, as it could not convert that which it lawfully possessed. Further, following the rejection of the funds, BOA promptly made a good faith effort to return all four deposits to the Plaintiff.[3]

---

[2]The Record suggests that the Plaintiff deposited the funds into an unmanned ATM specifically so that he could assign a United States dollar value to the funds himself and avoid an in-person foreign currency exchange.

[3]The Plaintiff claims that he did not receive all of the funds that BOA returned to him. Even assuming that this representation is true, no reasonable jury could find, however, that BOA did not, in good faith, mail all of the rejected funds from each deposit back to the Plaintiff. Whether or not the funds arrived is irrelevant to the conversion inquiry, as a good faith attempt to return the funds to the Plaintiff cannot be considered a *wrongful* exercise of dominion, even if the mailed funds did not physically arrive at the Plaintiff's residence. Whether BOA was *negligent* in so mailing the funds is

6

The Virginia Supreme Court has explained that "the tort of conversion encompasses any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *PGI, Inc. v. Rathe Productions, Inc.*, 576 S.E.2d 438, 443 (Va. 2003) (internal citations and quotation marks omitted). BOA's possession of the funds from the time it decided not to accept the deposits until the time it mailed the funds back to the Plaintiff cannot be considered "wrongful" to support a claim for conversion. BOA initially possessed the funds only because the Plaintiff voluntarily deposited the funds into one of BOA's ATMs; thus, BOA's possession of the funds was lawful from the start. Further, the parties' contract authorized BOA to reject all or part of any deposit, so BOA's decision to reject the funds did not automatically make BOA's possession of those rejected funds unlawful or otherwise wrongful. Indeed, once BOA rejected the deposits, BOA almost simultaneously mailed the deposits back to the Plaintiff.[4] Even if title reverted back to the Plaintiff upon BOA's rejection of the funds, BOA's extremely brief continued possession of the funds did not result in any *wrongful* denial or deprivation of the Plaintiff's right to possess the funds. The only "dominion" BOA exercised over the funds following their rejection was a good faith effort to return the rejected funds to the Plaintiff by individually packaging the deposits and sending them via first-class USPS mail to the Plaintiff's address. Such an exercise of dominion is not wrongful; in fact, failure to do precisely what BOA did – return the funds – may have ultimately resulted in a viable claim for conversion. No reasonable jury could find BOA liable to the Plaintiff

---

a separate inquiry addressed in detail herein.

[4]Deposits One, Two, and Four were mailed back to the Plaintiff one calendar day after BOA posted notice of its rejection and deposit correction for each deposit. Deposit Three, rejected on a Friday, was mailed back to the Plaintiff three calendar days after BOA posted notice of its rejection.

for conversion in this case, and BOA is entitled to judgment as a matter of law on the Plaintiff's conversion claim. Accordingly, the Court will grant BOA's motion for summary judgment as to Count One.

### B. Count Two – Breach of Contract

In Virginia, "[t]he elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *E.I. DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 688 F. Supp. 2d 443, 462 (E.D. Va. 2009) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). As previously noted herein, the parties were contractually bound to each other under the terms of the Deposit Agreement. Count Two of the Complaint alleges that BOA breached this contract by (1) rejecting the Plaintiff's deposits of foreign currency without notice or the Plaintiff's permission, (2) failing to pay interest on the funds at a rate of 0.020%, and (3) failing to return the deposited foreign currency to the Plaintiff. In its Order of November 12, 2009, the Court dismissed the Plaintiff's claim for breach of contract based on BOA's (1) rejection of the deposits without notice or the Plaintiff's permission and (2) failure to pay interest on the funds. Thus, for the purpose of the instant motion for summary judgment, the Court need only address the Plaintiff's claim that BOA breached the parties' contract by allegedly failing to return the deposited currency to the Plaintiff. As noted in the Court's Order of November 12, 2009, the relevant inquiry is whether BOA breached the parties' agreement if the rejected funds (1) were never sent back to the Plaintiff at all, or (2) were sent to the Plaintiff by regular USPS mail, but were lost in transit or otherwise did not arrive at the Plaintiff's address.

BOA, through sworn affidavits, has demonstrated that it did in fact mail all four of the deposits back to the Plaintiff by first-class USPS mail in four separate mailings. Nothing presently before the

Court suggests that BOA did not mail the deposits, and the Plaintiff, at times, admits to actually having received some of the rejected funds, though he also claims not to have received them all.[5] Therefore, BOA cannot have breached the parties' contract by failing to have mailed the deposits, as no reasonable jury could find that the deposits were never mailed. Thus, the only remaining inquiry is whether BOA breached the parties' contract by sending the rejected deposits by first-class USPS mail.

As indicated in the Court's Order of November 12, 2009, the Deposit Agreement is largely silent on the issue. The contract states simply that BOA "may refuse, accept for collection only, *or return all or part of any deposit*." Def.'s Mot. to Dismiss, Ex. I at 20 (emphasis added). The plain language of the contract indicates, therefore, that, upon receiving a deposit, BOA may (1) refuse the deposit outright, (2) accept the deposit for collection only, *or* (3) return all or part of any deposit. Thus, the contract does not even obligate BOA to return the deposits at all, much less by a certain method of delivery. BOA has demonstrated that standard banking practice and BOA's standard operating procedures involve the return of rejected deposits by regular USPS mail. The plain language of the contract is properly read to include the return of rejected deposits by regular USPS mail as an appropriate method of return, and the Plaintiff has not demonstrated any plainly or necessarily implied language of the contract obligating BOA to return rejected deposits by some other delivery method. No reasonable jury could find that BOA breached the parties' contract in this case,

---

[5]The Court notes its concern that the Plaintiff's representations have a spurious air and his actions reek of peccancy. Of course, though, "[o]n summary judgment, [the Court] must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). Therefore, for the purpose of the instant motion, the Court assumes that the Plaintiff's representation that he did not receive all of the rejected funds is truthful.

and BOA is entitled to judgment as a matter of law on this claim. Accordingly, the Court will grant BOA's motion for summary judgment as to Count Two.

## C. Count Three – Slander

Count Three of the Complaint alleges that BOA slandered the Plaintiff by reporting to ChexSystems and Early Warning Services, LLC[6] that there was suspected fraud activity relating to the Plaintiff's checking and savings accounts with BOA. ChexSystems is a credit reporting agency governed by the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). Also, for purposes of the FCRA, the Plaintiff is a consumer and BOA is a furnisher of credit information. The FCRA contains two sections, 15 U.S.C. § 1681h(e) and 15 U.S.C. § 1681t(b)(1)(F), that preempt certain claims from being brought against those who furnish information to a consumer reporting agency. While courts have reconciled these provisions differently, this Court has determined that the provisions in § 1681h(e) apply to common law torts, and the provisions in § 1681t(b)(1)(F) apply to state statutory regulation. *Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d 725, 728 (E.D. Va. 2003). The plaintiff has brought only a common law slander claim, or more appropriately in Virginia, a common law defamation claim, so it is governed by § 1681h(e).

Section 1681h(e) prohibits the bringing of certain common law claims, including claims for defamation, based on furnishing information to a consumer reporting agency. An exception to such "common law preemption" exists where false information is furnished with malice or willful intent to injure. 15 U.S.C. § 1681h(e). In other words, § 1681h(e) preempts "defamation actions that do not allege malice or willfulness." *Swecker v. Trans Union Corp.*, 31 F. Supp. 2d 536, 539 (E.D. Va.

---

[6]BOA has demonstrated, through sworn affidavits, that it never reported any information regarding the Plaintiff's checking or savings accounts to Early Warning Services, LLC. The Plaintiff has not demonstrated otherwise, and all further analysis will address only BOA's reporting of information to ChexSystems.

10

1998). In its Order of November 12, 2009, the Court found that the Plaintiff's Complaint properly stated that the information reported was false and that, though it did not specifically allege malice or willful intent to injure, drawing all reasonable inferences in favor of the Plaintiff, the Complaint alleged facts from which a reasonable finder of fact could find malice or willful intent to injure such that his defamation claim might survive preemption under § 1681h(e).

At this stage of the proceeding, however, it is abundantly clear that BOA did *not* act with malice or a willful intent to injure the Plaintiff in reporting information to ChexSystems.[7] Indeed, no reasonable jury could find otherwise. "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Harte-Hanks Commc'n, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989). "[J]udges, as expositors of the Constitution, have a duty to independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'" *Id.* at 686 (internal quotation marks and citations omitted). In the case at bar, the Record does not evince actual malice by clear and convincing proof. As a matter of law, BOA's actions in reporting information to ChexSystems were neither malicious nor willfully injurious to the Plaintiff, and no reasonable jury could find BOA liable to the Plaintiff for defamation. Accordingly, the Court will grant BOA's motion for summary judgment as to Count Three.

**D.   Count Four – Negligence**

Count Four of the Complaint alleges that BOA was negligent for breaching its duty to properly safeguard the Plaintiff's deposited funds. "To establish a cause of action for negligence, the duty alleged to have been tortiously breached must be a common law duty, not a duty arising between the

---

[7]Even if BOA had acted with malice or a willful intent to injure, it does not appear that the information that it reported to ChexSystems was false.

parties solely by virtue of a contract." *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 136 (1999). Indeed, "[w]ell-established Virginia law holds that a duty that arises solely from a contract can only provide the basis for a contract claim; it cannot provide the basis for a negligence claim." *Wert v. Jefferds Corp.*, 325 Fed. Appx. 175, 176 (4th Cir. 2009) (citing *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998)). Therefore, for the Plaintiff to maintain a negligence claim against BOA, he must identify a common law duty owed him by BOA that arose separate and apart from any duty imposed by the parties' contract.

The Plaintiff has identified no such common law duty. The Plaintiff argues only that BOA "assumed the duty to protect Mr. Eke's property from loss by virtue of its acceptance of the Currencies."[8] Pl.'s Resp. to Def.'s Mot. for Summ. J. at 33. To the extent that BOA assumed a duty to protect the Plaintiff's deposited currency, it did so only pursuant to the parties' contract. Again, the contract allowed BOA to "refuse, accept for collection only, or return all or part of any deposit." Def.'s Mot. to Dismiss, Ex. I at 20. Thus, BOA was thoroughly justified in refusing the Plaintiff's funds. Further, as previously explained herein, the parties' contract allowed for the return of the rejected deposits by first-class USPS mail. BOA's rejection and return of the Plaintiff's deposits were governed by the parties' contract, and the Plaintiff has demonstrated no duty arising outside of the contract that BOA tortiously breached. Absent a common law duty, BOA cannot be liable for

---

[8]The Plaintiff appears to have abandoned his argument that depositing the funds into the ATM created a mutually-beneficial bailment that carries a common law duty of ordinary care in safeguarding the bailed property. As such, the Court need not reach the argument. However, even if the Plaintiff had not abandoned this argument, the Court would have rejected the argument because "a general deposit in a bank is 'not a bailment.'" *Gardner v. Commonwealth*, 262 Va. 18, 21 (2001) (quoting *Pendleton v. Commonwealth*, 110 Va. 229, 234 (1909)). Given that the Plaintiff's deposits were simply "general deposits," the bank did not become the bailee of the Plaintiff's funds. Even if BOA's rejection of the funds created a constructive bailment, BOA exercised at least ordinary care by sending the rejected funds back to the Plaintiff via first-class USPS mail.

negligence as a matter of law. Indeed, no reasonable jury could find BOA liable to the Plaintiff for negligence, and BOA is entitled to judgment as a matter of law on this claim. Accordingly, the Court will grant BOA's motion for summary judgment as to Count Four.

## IV. Conclusion

For the foregoing reasons, the Court finds that no genuine issues of material fact exist as no reasonable jury could return a verdict for the Plaintiff with respect to Counts One, Two, Three, or Four. Construing all facts and inferences in the light most favorable to the Plaintiff, the Record, taken as a whole, cannot lead a rational trier of fact to find for the Plaintiff in this case, and the Court finds that BOA is entitled to judgment as a matter of law on all four of the Plaintiff's claims. Accordingly, the Court will grant BOA's motion for summary judgment as to Counts One, Two, Three, and Four. An appropriate Final Order shall issue.

August 6, 2010 /s/
DATE RICHARD L. WILLIAMS
SENIOR UNITED STATES DISTRICT JUDGE